IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BRITNI L., | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 1:18-cv-05282-RDC |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

## **FINAL OPINION & ORDER**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") under the Social Security Act ("SSA" or the "Act"), alleging disability and inability to work because of multiple sclerosis ("MS"), anxiety, depression, and trigeminal neuralgia. Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff's claim. The parties consented to the exercise of jurisdiction by the undersigned magistrate judge. (Dkt. entry from Nov. 20, 2018); *see also* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Standing Order No. 07-02 (N.D. Ga. Jan. 30, 2008); LR 83.9(A), NDGa. Therefore, this Order constitutes a Final Order of the Court.

For the reasons set forth below, the Court **ORDERS** that the final decision of the Commissioner be **REVERSED and REMANDED** to the Commissioner for further proceedings.

## I.  DISABILITY DETERMINATION

Under the Social Security Act, an individual is "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Any impairments must result from anatomical, psychological, or physiological abnormalities demonstrated by medically accepted clinical or laboratory diagnostic techniques, and must be of such severity that they prevent the claimant from engaging in past work or any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)–(3), 1382c(a)(3)(B), (D).

To evaluate a disability claim, an Administrative Law Judge ("ALJ") must use the five-step, sequential analysis outlined in the Social Security regulations: (1) whether he is engaged in substantial gainful activity; (2) if not, whether he has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals the Listing of Impairments ("Listings") at 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if not, whether

he can perform his past relevant work in light of his residual functional capacity ("RFC"); and (5) if not, whether, based on his RFC, age, education, and work experience, he can perform other work found in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).[1]

The claimant bears the burden of proof at the first four steps. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018). The claimant must establish that a severe impairment prevents him or her from performing past work. *See* 20 C.F.R. § 404.1512; *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The ALJ determines the claimant's RFC based on "all the relevant medical and other evidence." 20 C.F.R. § 404.1520(e); *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).

---

[1] The Disability Insurance Benefits program ("DIB") under Title II of the Social Security Act provides benefits to persons who have contributed to the program and who are determined to be "disabled" due to a physical and/or mental impairment. 42 U.S.C. §§ 401–433. The Supplemental Security Income ("SSI") program under Title XVI of the SSA extends benefits to indigent disabled persons. 42 U.S.C. §§ 1381–1383f. Although different statutes and regulations apply to each type of claim, they are often parallel statutes and regulations, and the legal standards governing a determination of "disability" are the same. *See* 42 U.S.C. § 1383(c)(3) (establishing that the judicial provisions of 42 U.S.C. § 405(g) are fully applicable to claims for SSI). Therefore, to the extent that the Court cites to DIB cases, statutes, or regulations, they are equally applicable to Plaintiff's SSI claims, and vice versa. *See Cherrell J. C. B. v. Saul*, No. 1:18-CV-04323-AJB, 2020 WL 1460173, at *1 (N.D. Ga. Mar. 20, 2020); *Sonya E. v. Saul*, No. 1:18-CV-4098-AT-JKL, 2020 WL 1128003, at *1 (N.D. Ga. Mar. 9, 2020).

At the fifth step, the burden shifts to the Commissioner to demonstrate that jobs that the claimant can perform are available in significant numbers in the national economy. *Phillips*, 357 F.3d at 1239. The ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). The ALJ may use two means to determine the claimant's ability to adjust to other work: (1) application of the Medical Vocational Guidelines (the "grids"), 20 C.F.R. pt. 404 subpt. P, app. 2, and consideration of factors that limit the number of jobs realistically available to an individual, or (2) using a vocational expert ("VE") to answer hypothetical questions concerning the kinds of jobs an individual can perform based on his or her capacity and impairments. *Phillips*, 357 F.3d at 1239–40.

Despite the shifting of burdens at step five, the overall burden rests on the claimant to prove that he or she is unable to engage in any substantial gainful activity that exists in the national economy. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001). In other words, the claimant must ultimately show that he or she cannot perform the jobs listed by the ALJ.

## II.  FACTUAL BACKGROUND

Plaintiff filed her DIB application on January 20, 2015, providing an alleged onset date of November 24, 2014.  (R. 48).[2]  Plaintiff was 25 years old at her alleged onset date and 29 years old at the time of the ALJ's decision.  (R. 15, 48).  Her initial application showed that she was filing for disability based on her diagnoses of multiple sclerosis, anxiety, depression, and trigeminal neuralgia.  (R. 48).  Her application was denied initially and on reconsideration by examiners for the Social Security Administration (the "Agency").  (R. 63, 82).

Plaintiff requested a hearing before an ALJ.  (R. 102).  On November 30, 2017, the ALJ issued a written opinion finding that Plaintiff was not disabled under the Act.  (R. 15–23).

Plaintiff then filed a Request for Review, which the Agency's Appeals Council denied, making the ALJ's decision the final decision of the Commissioner. (R. 1).  Having exhausted all administrative remedies, Plaintiff filed this action on November 16, 2018. (Doc. 1).  The matter is now before the undersigned upon the administrative record and the parties' briefs, and the Court finds that it is ripe for judicial review pursuant to 42 U.S.C. § 405(g).

---

[2] The administrative record, or transcript of proceedings, is cited herein as "R."

## A.    Employment History

Plaintiff worked as a teacher assistant at a Montessori preschool from May 2010 to May 2013.  (R. 257).  She also worked as a cashier, sales associate, and shift leader at a gas station from March 2011 to August 2013.  *Id.*  From July 2015 to November 2015, she worked at Ulta Beauty as a cashier, where her duties included stocking products and dealing with customers.  *Id.*  She worked at a liquor store from approximately August 2016 to December 2016.  *Id.*  She indicated that she worked as a cashier, which required her to stand for eight hours at a time.  *Id.*  She earned $6,609 and $10,385 in 2016, from her liquor store job and from self-employment, respectively.  (R. 192).

## B.    Medical Records

Plaintiff's earliest medical evidence in the record is from an emergency room ("ER") visit at Grady Hospital in November 2012.  (R. 463).  Plaintiff presented with migraines and double vision in her left eye.  *Id.*  Based on an MRI, a neurologist diagnosed her with MS but noted that her MRI did not display any abnormal areas of enhancement or worsening inflammation from the disease.  (R. 468–69).

Plaintiff visited Grady Hospital as an outpatient at least seven times in 2014 and twice for ER visits in February 2015 and August 2015.  (R. 260–70).  In July

2014, Dr. Melanie Winningham, Plaintiff's treating neurologist,[3] stated that Plaintiff had no "flare ups" in her MS but that she experienced pain in her face for three days, which resolved without treatment.[4]  (R. 263).  Dr. Willingham also recorded that Plaintiff was "[n]ervous about walking" and that her gait was shorter and possibly more off-balance.  *Id.*  As to Plaintiff's mood, Dr. Willingham noted that Plaintiff had been sleeping less than four hours per night frequently and that she had poor concentration and emotional lability.  *Id.*  Plaintiff received a weekly injection of Avonex, and although her MRI showed that she had "multiple parenchymal white matter lesions," none of them were worsening and no new lesions were present since April 2013.  (R. 264–65).

During her ER visits, Plaintiff reported that she had a stabbing or burning pain from her abdomen to her right foot and that, when she arrived at the hospital, she was "achy" and walked with a cane.  (R. 272).  Plaintiff also reported that she had three instances of similar pain in the past two months but it "went away until today."  (R. 272, 277).  During those episodes, she was unable to walk for approximately 15 minutes until the pain resolved.  *Id.*  Other notes stated that Plaintiff had chills,

---

[3] A note from Plaintiff's inpatient visit at Grady Hospital stated that Dr. Winningham was Plaintiff's primary care physician.  (R. 274).

[4] Dr. Winningham's notes inexplicably stated that Plaintiff's last visit was in "9/2014," which would have been *after* her appointment with Dr. Winningham.  (R. 263).

shortness of breath, diaphoresis, nausea, pelvis pain, dizziness, and weakness. (R. 276). However, her physical exam stated that she did not have tenderness to touch and she had a full range of motion. *Id.*

The consulting neurologist during this visit, Dr. Manisha Malik, stated that Plaintiff was "currently asymptomatic" but had paraesthesia and weakness that morning. (R. 289). Plaintiff reported to Dr. Malik that she "had a hard time carrying out daily activities," and Dr. Malik concluded that Plaintiff had a baseline level of function of "slight disability, unable to carry out all previous activities but able to look after own affairs without assistance." (R. 290). Plaintiff's MRI again indicated that she did not have any physiological signs that her MS was worsening. (R. 294).

Records from Dr. Alan Perry show that Plaintiff received a physical exam on January 29, 2015. (R. 513). Dr. Perry wrote that Plaintiff exhibited "no altered mental status, clumsiness, focal sensory loss, focal weakness, loss of balance, memory loss, near-syncope, slurred speech, syncope, visual change or weakness." (R. 517). He found that she experienced fatigue, anxiety, and depression and noted that she had been exercising intermittently. *Id.* Dr. Perry noted elsewhere that Plaintiff experienced myalgia, joint swelling, and arthralgia in her musculoskeletal system.[5] (R. 519).

---

[5] "Myalgia" and "arthralgia" refer to pain in the soft tissues that connect muscles, bonds, and organs or pain within a joint, respectively. *Myalgia*, Johns Hopkins Medicine, https://www.hopkinsmedicine.org/health/conditions-and-

Plaintiff visited the ER at Grady Hospital on August 20, 2015, for a flare in her MS and trigeminal neuralgia.[6] (R. 400, 402). According to the doctor's notes from that visit, this incident was Plaintiff's second flare since November 2014. (R. 403). She reported "excruciating, burning pain" on the left side of her face with intermittent hyperacusis.[7] *Id.* She also had some blurred vision. (R. 404). However, Plaintiff had no weakness in her left leg and was able to walk without difficulty. (R. 403). Plaintiff's trigeminal neuralgia was noted as "stable and gradually improving," and she was discharged that day. (R. 407). Although she was prescribed Tegretol for this condition, notes indicate that she had been unable to refill the prescription due to the cost. (R. 411).

---

diseases/myalgia (last visited Oct. 19, 2020); *Joint Pain*, Mayo Clinic, https://www.mayoclinic.org/symptoms/joint-pain/basics/definition/sym-20050668 (last visited Oct. 19, 2020).

[6] Trigeminal neuralgia is "a chronic pain condition that affects the trigeminal or 5th cranial nerve, one of the most widely distributed nerves in the head." *Trigeminal Neuralgia Fact Sheet*, National Institute of Neurological Disorders and Stroke, https://www.ninds.nih.gov/Disorders/Patient-Caregiver-Education/Fact-Sheets/Trigeminal-Neuralgia-Fact-Sheet (last visited Oct. 19, 2020). The most typical form of the disease "causes extreme, sporadic, sudden burning or shock-like facial pain that lasts anywhere from a few seconds to as long as two minutes per episode. These attacks can occur in quick succession, in volleys lasting as long as two hours." *Id.* The record is not clear on the date that Plaintiff was diagnosed with trigeminal neuralgia.

[7] Hyperacusis is "a hearing disorder that makes it hard to deal with everyday sounds." *Hyperacusis*, Web MD, https://www.webmd.com/brain/sound-sensitivity-hyperacusis#1 (last visited Oct. 19, 2020).

Plaintiff returned to Grady Hospital on December 21, 2015 for a follow-up exam. (R. 448, 451). Neurologist Aliza Kumpinsky noted that Plaintiff's MRI showed no new lesions and thus found that there was "minimal evidence of active disease" from her MS. (R. 450–51). At that visit, Plaintiff stated that she had not used a cane to walk "in a while," but she reported that she still experienced sporadic episodes of sharp pain in her left leg and foot. (R. 448). She had experienced six of these episodes within six months. *Id.* Dr. Kumpinsky stated that Plaintiff's pain "could be paroxysmal pain syndrome from [MS]." (R. 451). However, her MRI again showed "no new lesions." *Id.*

Dr. Robert Storms evaluated Plaintiff in a two-hour interview and mental status exam on June 16, 2015. (R. 394). Dr. Storms also interviewed Plaintiff's mother, who reported that Plaintiff was depressed consistently and experienced extreme fatigue. (R. 395). Plaintiff's mother also stated that was not mobile, fell down at times, sometimes did not respond when her family tried to reach her, was forgetful, and had lost 40 pounds because of her refusal to eat. *Id.*

Dr. Storms noted that Plaintiff needed a cane to walk and, during her interview, she was barely audible and cried throughout. *Id.* However, she was cooperative during the exam and was oriented to time, person, and situation. (R. 395–96). Plaintiff reported to Dr. Storms that she suffered depression most days of the week and had insomnia, poor appetite, chronic fatigue, and feelings of

worthlessness.  (R. 396).  She also stated that she watched TV, visited the park and with family, took care of her son Monday through Friday, and could drive.  (R. 395). Plaintiff reported that, depending on the day, she could not maintain her own hygiene and that she sometimes could not feel the bottom of her feet.  *Id.*  On those days, she needed help.  *Id.*  Dr. Storms indicated that Plaintiff had no perceptual abnormalities and that her thought processes were logical, coherent, and relevant.  (R. 396).

Dr. Storms concluded that Plaintiff had major depressive disorder and her symptoms were "severe but not psychotic."  (R. 398).  He also found that Plaintiff exhibited poor focus and was occasionally distracted, meaning that timely completion of tasks could be problematic.  *Id.*  He stated that Plaintiff's work history suggested that she could get along with coworkers, supervisors, and the public, but that her depression may negatively impact her ability to handle ordinary job stress. *Id.*

Plaintiff received a consultative examination from Dr. Jessie Al-Amin on September 10, 2015.  (R. 432).  Plaintiff informed Dr. Al-Amin that she had chronic fatigue, insomnia, weakness with pain, and spasticity and tremors in her extremities. *Id.*  She stated that back spasms were a 6/10 on the pain scale and had been present for more than one year.  *Id.*  She also had chronic migraines from her trigeminal neuralgia, which she rated a 10/10 for pain.  *Id.*  As to her functioning, she reported that she could walk for 10 minutes at a time, sit for 1 hour, and stand for 20 minutes.

(R. 433).  She could also lift 5 pounds and climb stairs.  *Id.*  She told Dr. Al-Amin that the medications for her MS, depression, and pain were effective.  *Id.*

During the examination, Dr. Al-Amin observed that Plaintiff could stand without assistance but used a cane to walk or stand.  (R. 441).  She had no difficulty getting onto the exam table.  *Id.*  Plaintiff had a normal gait but had difficulty squatting and walking on her heels and toes.  *Id.*  She had no difficulty alternating between standing and sitting, but she had difficulty bending while sitting.  *Id.*  Dr. Al-Amin concluded that Plaintiff had probable cervical area muscle spasms and a generalized weakness of the extremities, in addition to diagnoses of MS, depression, and migraines from her trigeminal neuralgia.  (R. 436).  He also found that Plaintiff had normal strength in her hands and mild weakness in both of her legs.  (R. 441).

Dr. Al-Amin took an x-ray of Plaintiff's cervical spine, which showed that she had "minimal straightening of the normal lordosis" and no other apparent problems.  (R. 437). An x-ray of Plaintiff's left hand also appeared normal.  (R. 438).

Plaintiff visited the ER at Piedmont Healthcare on July 5, 2017, complaining about mild to moderate numbness in her left leg over the previous four days.  (R. 531).  She worried that her leg was a sign of an MS relapse.  *Id.*  The admitting physician noted that Plaintiff appeared to be otherwise in normal condition, that her leg strength was intact, and that her motor skills and sensation to light touch were

intact in all four extremities.  (R. 533, 536).  Her gait and coordination were also normal.  *Id.*  She did not receive any other treatment.  (R. 531).

### C.    Proceedings Before the Agency

Plaintiff appeared at an initial hearing before the ALJ on December 13, 2017. (R. 30).  Plaintiff testified that she experienced migraines three to four times per week from her trigeminal neuralgia.  (R. 32).  She also stated that she had been experiencing a flare up in her MS for the past one or two weeks.  *Id.*  These two conditions made her sensitive "to air, to eating, or chewing," which would start as a toothache and advance to face tremors.  (R. 34).

Plaintiff stated that she had suffered from anxiety for about four years, but she had not sought mental health treatment.  (R. 33).  When the ALJ asked why she had not sought treatment, Plaintiff responded that she had been in denial because, even though she felt like there was something wrong, she believed that her medicine had caused some of her depression.  (R. 34).

Plaintiff testified that she was not working at the time of the hearing but in 2016 had worked part-time as a liquor store cashier.  (R. 33).  She stated that she also helped out at her sister's business, which she had categorized as self-employment on her work history. *Id.*  As to her liquor store job, Plaintiff testified that she had difficulty with standing, forgetting her tasks, and communicating with

customers.  (R. 35).  She also stated that she struggled because she was not given breaks at work.  *Id.*

Plaintiff's sister, who owned a barbershop where Plaintiff worked, also testified.  (R. 36–37).  She stated that Plaintiff sometimes worked for her, but she always made sure there was a backup available because Plaintiff needed to sit down frequently.[8]  (R. 37).

Plaintiff's sister stated that observing Plaintiff was "like watching somebody deteriorate in front of you."  (R. 38).  She had seen instances where Plaintiff was unable to move her arms or legs and observed her face tremors.  *Id.*  Plaintiff's sister had also seen instances where Plaintiff was unable to brush her hair or teeth for days and had been in the car when Plaintiff's legs stopped responding, causing her to step on the gas involuntarily.  *Id.*

Plaintiff's sister also testified that while Plaintiff was taking Avonex, her depression worsened and she stopped eating.  (R. 39).  Plaintiff also was generally not able to take of herself or her son.  *Id.*

At the conclusion of testimony from Plaintiff's sister, the ALJ asked a VE whether Plaintiff could perform any of her past relevant work if she had the following limitations: (1) frequently climb ramps and stairs, (2) never climb ladders,

---

[8] The VE classified this job as an "office helper," based on Plaintiff's statements that she would fetch items, answer phone calls, and sometimes sweep. (R. 42–43).

ropes, or scaffolds, (3) frequently handle, finger, and feel with the non-dominant left, upper extremity, (4) avoid all exposure to workplace hazards, (5) occasionally push and pull with her lower extremities, (6) perform only simple, routine tasks involving no more than simple instructions and few changes, and (7) occasionally interact with coworkers, supervisors, and the public.  (R. 43–45).

The VE responded that Plaintiff could not perform any of her past work with those limitations but she could perform other jobs in the economy. (R. 45). Specifically, Plaintiff could work as a binder sorter, paper inserter, and fuser packer. *Id.*

The ALJ then asked if Plaintiff could perform these jobs even if she were off-task for five percent of each workday.  (R. 46).  The VE responded that an individual could still fulfill each of these roles.  *Id.*  However, if the individual were off-task for 15% of each workday, then she could not work.  *Id.*

### D.    The ALJ's Decision

In a written decision, the ALJ concluded that Plaintiff was not disabled within the meaning of the SSA.  (R. 15–23).  At step one, the ALJ found that Plaintiff was insured under the SSA through March 31, 2020, and that she had engaged in substantial gainful activity since her alleged onset date, based on records that she earned $16,385 in 2016.  (R. 17).

At step two, the ALJ found that Plaintiff had severe impairments of MS, anxiety, depression, headache diplopia, and trigeminal neuralgia under 20 C.F.R. § 404.1520(c).  *Id.*   At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that was equivalent to the impairments in the Listings.  (R. 17–18).

At step four, the ALJ made the following RFC finding.  (R. at 18–21). Plaintiff could perform light work, except that she could frequently balance, stoop, kneel, crouch, and crawl.  (R. 18).  Plaintiff could also frequently climb ramps and stairs but never ladders, ropes, or scaffolds.  *Id.*  Plaintiff could frequently handle, finger, and feel with her upper left arm, which was her non-dominant hand.  *Id.*  The Plaintiff should avoid workplace hazards but that she could push and pull with her lower extremities.  (R. 18–19).  Plaintiff could perform simple, routine tasks with only simple instructions and decision-making. (R. 19).  Plaintiff also could only have few workplace changes and could occasionally interact with coworkers, supervisors, and the public.  *Id.*  Finally, Plaintiff would be expected to be off-task five percent of the workday.  *Id.*

The ALJ relied upon the following findings to support the RFC finding.  As to Plaintiff's subjective complaints about her impairments, the ALJ noted that Plaintiff indicated in the initial disability report that she was limited in her ability to "lift, squat, bend, reach, walk, sit, kneel, talk, hear and climb" and that she had a

limited ability to "see, remember, complete tasks, concentrate, understand, follow instructions, use her hands and get along with others." *Id.* The ALJ also considered Plaintiff's testimony that her anxiety and depression made it difficult to work, that her MS caused "physical issues," and that she had migraines three to four times per week. *Id.* The ALJ noted that Plaintiff's sister testified that Plaintiff sometimes was unable to move her legs and had difficulty lifting her arm. *Id.*

The ALJ found that Plaintiff's impairments could reasonably be expected to cause her alleged symptoms. *Id.* However, the ALJ concluded that Plaintiff's subjective complaints about the intensity, persistence, and limiting effects of her symptoms were not consistent with the record. *Id.* As grounds for that finding, the ALJ cited Dr. Perry's notes from January 2015 that Plaintiff had no altered mental status, focal weakness, loss of balance, memory loss, headaches, neck pain, vertigo, or vomiting. *Id.* He also cited Dr. Malik's consultation report from Plaintiff's ER visit in February 2015 where she stated that Plaintiff had no signs of distress, was "currently asymptomatic" for MS, and had no focal deficits during her exam. (R. 19–20). The ALJ found that the fact that Plaintiff did not seek treatment from July 2014 until that date suggested that she had no ongoing problems. (R. 20). He also noted that Plaintiff could drive and exercised intermittently. (R. 19–20).

As to Dr. Storms's report, the ALJ pointed to notes that Plaintiff was generally alert, well-oriented, coherent, and endorsed no abnormal mental conditions. (R. 20).

The ALJ then cited the ER report from August 20, 2015, stating that Plaintiff had no lower extremity weakness, that she was able to walk without difficulty, and that her trigeminal neuralgia was stable and improving.  *Id.*  The ALJ also cited Plaintiff's July 5, 2017, ER report indicating that she had no headaches.  *Id.*

The ALJ then focused on the "[o]bjective testing" of Plaintiff's cervical spine, which was generally normal under Dr. Al-Amin's report. *Id.* The ALJ also cited Plaintiff's MRI, which confirmed Plaintiff had MS but no active disease.  *Id.*

As to Dr. Al-Amin's examination, the ALJ pointed to the fact that Plaintiff's medication was reported to be effective for anxiety and depression; her MS and pain medication also proved effective.  *Id.*  Additionally, the ALJ cited Dr. Al-Amin's conclusions that Plaintiff was alert, well-oriented, and showed full strength in her upper extremities.  *Id.*  For her lower extremities, the ALJ noted that Plaintiff had no difficulty getting onto the exam table or rising to a standing position.  *Id.*  He also noted that Plaintiff only had occasional numbness in her left wrist and her gait and station were normal.  *Id.*

The ALJ found that Plaintiff's work history at her liquor store job established that she could perform multiple tasks, and he noted repeatedly that Plaintiff did not seek mental health treatment during this time.  (R. 20–21).

The ALJ accorded little weight to Dr. Storms's opinion because it was based largely on Plaintiff's subjective complaints, some weight to the state agency

assessments, and some weight to Dr. Al-Amin's opinion because it was vague. (R. 21).

Finally, the ALJ determined, consistent with the VE's testimony, that the limitations found in the RFC rendered Plaintiff unable to perform any of her past work. (R. 21–22). However, the ALJ concluded that Plaintiff's RFC allowed her to perform work that existed in significant numbers in the national economy, including binder sorter, paper inserter, and packer. (R. 22–23). Accordingly, the ALJ found that Plaintiff was not disabled, as that term is defined under the SSA, from November 24, 2014, through the date of decision. (R. 23).

### III.  STANDARD OF REVIEW

This Court's review is limited to determining whether the ALJ's factual findings are supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The ALJ's findings should be affirmed if they are supported by substantial evidence, which is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997), *quoted in Winschel*, 631 F.3d at 1178; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Substantial evidence is "more than a scintilla, but less than a preponderance." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239

(11th Cir. 1983)). This Court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," even if the evidence preponderates against the Commissioner's decision. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Crawford*, 363 F.3d at 1158–59.

Despite this deference, to determine whether substantial evidence supports each essential administrative finding, the Court must conduct an independent review of the entire record, considering evidence that is favorable or unfavorable to the Commissioner's decision. *Bloodsworth*, 703 F.2d at 1239; *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). If substantial evidence supports the ALJ's factual findings and he or she applies the proper legal standards, the findings are conclusive. *Lewis*, 125 F.3d at 1210; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).

Credibility determinations fall, as a general matter, within the province of the ALJ. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014) (citations omitted). A court will affirm the ALJ's clearly articulated credibility findings if they are supported by substantial evidence. *Id.* The Court does not accord the same level of deference to the Commissioner's conclusions of law, which enjoy no presumption of validity. *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). If the Commissioner fails to apply correct legal standards or articulate the legal standards applied, the Court must generally reverse the decision. *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

# IV. DISCUSSION

Plaintiff raises one claim of error: that the ALJ improperly discredited her subjective complaints of pain and other symptoms relating to her MS and trigeminal neuralgia.  (Doc. 10 at 5).

The Eleventh Circuit applies a "pain standard" when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 2002)).  Under that standard, the claimant must provide "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain, or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."  *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the record shows that the claimant has a medically determinable impairment that could reasonably be expected to produce her symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work.  20 C.F.R. §§ 404.1529(c)(1), 416.927(c)(1).  If the ALJ discredits a claimant's testimony about her pain or subjective symptoms, the ALJ must articulate explicit and adequate reasons for doing so.  *Dyer*, 395 F.3d at 1210 (citing *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995)).  The ALJ need not cite specific phrases or reference every piece of evidence in determining

whether a claimant's testimony about her symptoms is credible, but the ALJ's credibility finding "cannot merely be a broad rejection" suggesting that the ALJ failed to consider the Plaintiff's medical condition as a whole. *Id.* Inconsistent activities of daily living, the frequency of the claimant's symptoms, and the types and dosages of medication are all permissible grounds to reject a claimant's testimony. *Id.* at 1212.

Plaintiff argues that she satisfied the requirements of the pain standard because she presented medical evidence of the severity of her MS and trigeminal neuralgia and her symptoms could reasonably be expected to be caused by those conditions. (Doc. 10 at 7–8). She points to the evidence from her neurologists showing that, in 2015, she had a shorter gait, stiff neck and back, fatigue, emotional lability, cramping, occasional urinary incontinence, and occasional face pain. *Id.* She also points to evidence from Piedmont Healthcare and Grady Hospital showing that her MS was exacerbated. *Id.* She argues that the ALJ failed to apply the pain standard or articulate valid reasons for discrediting her testimony. (*Id.* at 8–9).

In response, the Commissioner argues that the ALJ's determination about the intensity, persistence, and limiting effects of Plaintiff's symptoms was supported by substantial evidence. (Doc. 11 at 6). The Commissioner relies largely on the same evidence as the ALJ to argue that, although Plaintiff had been diagnosed with MS

and trigeminal neuralgia, the medical evidence suggested that these conditions were not as limiting as Plaintiff asserted.  (*Id.* at 7–10).

Here, the ALJ complied with the formal requirements of the pain standard by finding that Plaintiff presented evidence of underlying medical conditions and that those conditions could reasonably be expected to produce her alleged pain.  *See Wilson v. Barnhart*, 284 F.3d at 1225.  However, the Court concludes that the ALJ's discrediting of Plaintiff's subjective complaints about the limiting effects of her pain was not supported by substantial evidence.

The ALJ found that Plaintiff had five severe impairments: (1) MS, (2) anxiety, (3) depression, (4) headache diplopia, and (5) trigeminal neuralgia.[9]  (R. 17).  In support of the RFC finding, the ALJ concentrated significant attention on the fact that Plaintiff had worked part-time in 2015 and 2016, earned enough income in 2016 to reach the threshold for substantial gainful activity, and had never received mental health treatment for her anxiety and depression.  (R. 19–21).

---

[9] The Court notes that the term "severe" at step two is a term of art that essentially means "non-trivial."  *See McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).  This finding did not require the ALJ to conclude that Plaintiff had significant limitations from these impairments, as mere diagnoses do not bind the ALJ to specific findings at step four, but it did require the ALJ consider the limiting effects of each of those conditions based on the record evidence. *See Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987) (stating that the mere diagnosis of polymyalgia rheumatica says nothing about why the condition makes it impossible for the claimant to be gainfully employed); *but see Davis v. Shalala*, 985 F.2d 528, 532 (11th Cir. 1993) (stating that the ALJ must consider the impact of the medically severe combination of impairments throughout the disability determination process).

Critically, though, the ALJ paid little attention to the longitudinal medical evidence pertaining to her MS and trigeminal neuralgia. [10] Relating to those conditions, the ALJ cited notes from January 29, 2015, February 21, 2015, and July 2017, all of which were ER reports. (R. 19–21 (citing R. 272, 289, 403, 407, 532)). In particular, the ALJ cited the ER physician's note on January 29, 2015, that Plaintiff's condition was "stable and improving." (R. 407). That statement was included in Grady Hospital's emergency department notes and the section in which it was placed was marked "Disposition." *Id.* The note that the ALJ cited from February 21, 2015, came from a consulting neurologist's report, who noted that Plaintiff was "currently asymptomatic" but that she had presented with severe pain. (R. 289–90). As for the July 2017 report, the ALJ relied on a note that Plaintiff had no headaches, which was stated in a review of Plaintiff's bodily systems at the time of her visit. (*See* R. 53).

As for the ER records, those notes were snapshots of Plaintiff's status. There is no indication that the ALJ considered those records in context with Plaintiff's overall medical history. (*See* R. 272–303, 402–17, 531). For instance, the ALJ did not acknowledge that Plaintiff presented to the ER in July 2017 complaining of leg numbness from her MS—not head pain from trigeminal neuralgia—when he relied

---

[10] Plaintiff does not argue that the ALJ erred in failing to evaluate the limiting effects of the headache diplopia he found at step two. Therefore, the undersigned has not considered that impairment here.

on that report to find that Plaintiff generally did not suffer from headaches. *Id.* Similarly, the ALJ appeared to rely on the ER doctor's notes from January 2015 that Plaintiff's condition was stable to conclude that her trigeminal neuralgia was not limiting, but he did not consider that Plaintiff had "excruciating, burning pain" on the left side of her face, a finding that was contained in the same ER report. (*See* R. 403). Given that Plaintiff's allegations of pain were described as episodic in nature, it was unreasonable for the ALJ to assume that the fact that Plaintiff did not have certain symptoms at specific times meant that she did not have limitations from her pain generally.

The ALJ's opinion also gave no indication that he considered medical evidence pertaining to MS and trigeminal neuralgia from Plaintiff's non-emergency visits. A follow-up neurology appointment in December 2015 with Dr. Kumpinsky, a treating neurologist, stated that Plaintiff had sporadic episodes of sharp pain, which could have been "paroxysmal pain syndrome" from her MS. (R. 450–51).[11] The ALJ also made no mention of Dr. Winningham, who was Plaintiff's treating neurologist. (*See, e.g.*, R. 263–65).

---

[11] The ALJ did cite Plaintiff's MRI report from this visit, but he appeared to conflate it with Plaintiff's x-ray of her cervical spine. (*See* R. 20). Curiously, the ALJ focused on the fact that Plaintiff had no new lesions but gave no consideration to the possibility that the current lesions could have produced her reported episodic pain, numbness, and weakness during the relevant period. The mere fact that Plaintiff's MS was not *progressing* is not grounds to conclude that the abnormalities that she *already* had did not cause limiting pain.

Finally, the ALJ paid particular attention to the fact that Plaintiff reported that she exercised intermittently and could drive.  The fact that Plaintiff could focus on the road for short periods of time or dedicate some of her day to exercise was not relevant to the issue of whether Plaintiff's episodic flares impeded her ability to work.[12]  *See Reliford v. Barnhart*, 444 F. Supp. 2d 1182, 1190 (N.D. Ala. 2006) ("It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances.").

In short, the ALJ's opinion gives the impression that he broadly rejected Plaintiff's allegations relating to her MS and trigeminal neuralgia, not that he gave full consideration to all of the record evidence.  The ALJ was not required to cite or reference every piece of evidence. *Dyer*, 395 F.3d at 1210.  However, his reliance on context-specific statements in the medical evidence without indicating that he considered the contrary evidence prevents this Court from finding that his ultimate determination was supported by substantial evidence.  *See Owens v. Heckler*, 748 F.2d 1511, 1515 (11th Cir. 1984) (stating that the Court must evaluate the Secretary's findings in light of the entire record, not only the evidence that supports

---

[12] In the same vein, when citing Plaintiff's work history in 2016 as grounds for concluding that she was not as limited as she claimed, the ALJ did not give any consideration to the fact that the majority of Plaintiff's income that year came from her sister's employment. (R. 21). Plaintiff's sister testified that she "normally wouldn't hire anyone" like Plaintiff and that she would always have a backup employee. (R. 37).

the ALJ's decision); *Webster v. Barnhart*, 343 F. Supp. 2d 1085, 1094 (N.D. Ala. 2004) (finding that the ALJ's "omissions and mischaracterizations of the evidence cannot stand as a basis" for the VE's hypothetical question).

Plaintiff asks the Court to presume the veracity of her subjective complaints based on the Commissioner's error and require the Commissioner to enter an award of disability benefits. That result is reserved for cases where the Commissioner "has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).

Here, the cumulative evidence in the record does not compel the conclusion that Plaintiff is disabled. There was little evidence about the limiting effects of Plaintiff's anxiety and depression, given that she did not seek specific treatment for those conditions. Although there was evidence that she had received treatment for her MS and trigeminal neuralgia from 2015 to 2017, that evidence largely consisted of one-time ER visits and follow-up appointments, which do not provide a clear picture of Plaintiff's limitations from pain.[13] Therefore, the Court finds that the record was not sufficiently developed for the Court to reverse and require an award

---

[13] However, testimony from Plaintiff's sister suggested that Plaintiff's symptoms rendered her unable to care for herself for days at a time. (R. 38). Therefore, the ALJ's error was not harmless, as the RFC finding implicitly rejected this testimony.

of benefits.  *See Jasmatie R. v. Saul*, No. 1:19-cv-03541-AJB, 2020 WL 5406172, at *13 (N.D. Ga. Sept. 9, 2020) (remanding for further consideration where the record contained contradictory medical opinions); *but see Jones v. Barnhart*, 318 F. Supp. 2d 1102, 1107–08 (N. D. Ala. 2004) (remanding for an award of benefits when the record, including the opinion of the claimant's treating physician, showed that the claimant was "clearly entitled to disability benefits").  Therefore, the Court will remand the case to the Commissioner for further proceedings.

## V. CONCLUSION

For the foregoing reasons, the Court **ORDERS** that the final decision of the Commissioner be **REVERSED and REMANDED** for further proceedings consistent with this opinion.  The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff.

IT IS SO **ORDERED** on this 20th day of October 2020.

REGINA D. CANNON
United States Magistrate Judge